UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

COREY BONES, 03-B-1030,

          Petitioner,

      -v-                             09-CV-0598(MAT)
                                                **ORDER**

SUPT., GROVELAND CORRECTIONAL
FACILITY[1],

          Respondent.

---

## I.   Introduction

*Pro se* petitioner Corey Bones ("petitioner") has filed petition for writ of habeas corpus challenging the constitutionality of his conviction of Rape in the First Degree and Rape in the Second Degree (N.Y. Penal L. §§ 130.35(2), 130.30(1)) in Monroe County Court, following a jury verdict before Judge Frank P. Geraci, Jr. Petitioner was sentenced to concurrent terms of imprisonment, the longest of which being eight years with five years of post-release supervision.

## II.   Factual Background and Procedural History

Petitioner's conviction arises out of an incident on October 31, 2001, wherein he entered the apartment of Kenyatta McClary ("McClary") and had sexual intercourse with her 14-year-old niece, S.J. (or "the victim") while she slept on a sofa in the living

---

[1] Petitioner has named the State of New York as the respondent in this proceeding. However, the only proper respondent in a petition brought pursuant to 28 U.S.C. § 2254 is the petitioner's custodian. See Rule 2(a) of the rules governing § 2254 cases; <u>Viserto v. Goord</u>, 97-CV-0633, 1998 WL 214814, at *1 N.1 (W.D.N.Y. Apr. 20, 1998). The correct respondent for a § 2254 habeas proceeding is the name of the authorized individual having custody of the petitioner, which, in this case, is the Superintendent of the Groveland Correctional Facility. 28 U.S.C. § 2243. Thus, the Court strikes "The State of New York" as a respondent in this matter.

room. McClary was awakened by S.J., who told her that there "was a strange man on top her [sic] pulling her clothes down and that the stranger was still in the apartment." McClary got out of bed and saw petitioner standing in her bathroom, whom she recognized as a man named "Toast" from the neighborhood. Petitioner told McClary that he was looking for her [McClary], and that someone opened the door for him. He also stated that he did not rape McClary's niece, to which S.J. responded, "Yes, you did." Trial Tr. 247, 251-54, 325, 338, 346-54.

Petitioner told McClary that if she called the police, "something would happen" to her and her family. The two then argued for ten or fifteen minutes before petitioner left. McClary testified that she did not call the police because she was scared. Immediately after the incident, S.J. went into the bathroom, where she observed blood in her urine and "on the tissue." She did not, however, tell her mother or call the police because she was scared and did not know what to do. She further testified that after petitioner left the house, her aunt "just went back in her room like she didn't care." Trial Tr. 256-57, 259, 357, 360-62.

The next morning, S.J. "washed up" and went to school. She called her mother from school shortly after 9:00a.m., who in turn called the police. S.J. later went to the hospital for an examination, which yielded no lacerations. Trial Tr. 259-60, 327, 330-32, 337, 364-65, 367-68, 373.

Petitioner was found guilty of Rape in the First Degree based upon a theory of the victim's physical helplessness (N.Y. Penal L.

§ 130.35(2), and Rape in the Second Degree (§ 130.30(1)) for engaging in sexual intercourse with a person less than fifteen years old. Trial Tr. 640.

Through counsel, petitioner filed an appellate brief in the Appellate Division, Fourth Department, which unanimously affirmed the judgment of conviction. <u>People v. Bones</u>, 50 A.D.3d 1527 (4th Dept. 2008), <u>lv. denied</u>, 10 N.Y.3d 956 (2008). Petitioner then brought this *pro se* petition for a writ of habeas corpus, alleging the following grounds for relief: (1) the trial court erred in denying petitioner's request to introduce testimony that the victim had not been sexually active prior to the rape; (2) the verdict was against the weight of the evidence; (3) prosecutorial misconduct; (4) the trial court erred in denying petitioner's request for an adjournment; (5) the trial court erred in failing to suppress the victim's in-court identification; (6) the trial court's <u>Sandoval</u> ruling was erroneous; and (7) cumulative errors deprived petitioner of a fair trial.  Petition ("Pet.") ¶ 22(A)-(D) & Attach. A.

For the reasons that follow, the Court finds that petitioner is not entitled to the writ, and the petition is dismissed.

## III. Discussion

### A.    General Principles Applicable to Federal Habeas Review

#### 1.    Standard of Review

To prevail under 28 U.S.C. § 2254, as amended in 1996, a petitioner seeking federal review of his conviction must demonstrate that the state court's adjudication of his federal constitutional claim resulted in a decision that was contrary to or

involved an unreasonable application of clearly established Supreme Court precedent, or resulted in a decision that was based on an unreasonable factual determination in light of the evidence presented in state court.  See 28 U.S.C. § 2254(d)(1), (2); Williams v. Taylor, 529 U.S. 362, 375-76 (2000).

### 2.   Adequate and Independent State Ground Doctrine

"Under the independent and adequate state grounds doctrine, the Supreme Court 'will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment.'" Cotto v. Herbert, 331 F.3d 217, 238 (2d Cir.2003) (quoting Coleman v. Thompson, 501 U.S. 722, 729 (1991). "'This rule applies whether the state law ground is substantive or procedural.'" Id. A procedural bar is "adequate" if it is based on a rule that is "'firmly established and regularly followed' by the state in question." Garcia v. Lewis, 188 F.3d 71, 77 (2d Cir.1999) (quoting Ford v. Georgia, 498 U.S. 411, 423-424 (1991)). Whether application of the procedural rule is "firmly established and regularly followed" must be judged in the context of "the specific circumstances presented in the case...." Cotto, 331 F.3d at 240 (citing Lee v. Kemna, 534 U.S. 362, 386-387 (2002)); Hawthorn v. Lovorn, 457 U.S. 255, 263 (1982) ("State courts may not avoid deciding federal issues by invoking procedural rules that they do not apply evenhandedly to all similar claims.")

Further, "federal courts may not review state court decisions that rest on an adequate and independent state procedural default

unless petitioner can show both cause and prejudice or a fundamental miscarriage of justice." <u>Fama v. Comm'r of Corr. Servs.</u>, 235 F.3d 804, 809 (2d Cir.2000) (citing, *inter alia*, <u>Coleman</u>, 501 U.S. at 749-50). In order to bar federal review, "[t]he state court must actually have relied on the procedural bar as an independent basis for its disposition of the case." <u>Harris v. Reed</u>, 489 U.S. 255, 261-62 (1989) (internal quotation marks and citation omitted). Since "it can be 'difficult to determine if the state law discussion is truly an independent basis for decision or merely a passing reference,' . . . such reliance on state law must be 'clear from the face of the opinion.'" <u>Fama</u>, 235 F.3d at 809 (quoting <u>Coleman</u>, 501 U.S. at 732, 735).

   **B.   Merits of the Petition**

      **1.   Erroneous Application of Rape Shield Law**

   Petitioner first contends that the trial court should have allowed into evidence statements in S.J.'s hospital records that indicated that she had not previously had sexual intercourse before the rape incident[2]. Pet. ¶ 22(A). On direct appeal, the Fourth Department rejected petitioner's argument, holding that the trial court "properly determined that CPL 60.42, which concerns the admissibility of evidence of a victim's past sexual activity, also

---

   [2] Petitioner's claim implicates a matter of New York statutory law. Under New York's rape shield law, evidence of a victim's sexual conduct is generally inadmissible in a rape prosecution. <u>See</u> N.Y. Crim. Proc. L. § 60.42. Such evidence may nevertheless be admissible where, after an offer of proof, the court determines the evidence "to be relevant and admissible in the interest of justice." N.Y. Crim. Proc. L. § 60.42(5).

concerns the admissibility of evidence of the absence of sexual activity on the part of the victim." Bones, 50 A.D.3d at 1527.

The respondent has properly acknowledged that petitioner's claim is rooted in state evidentiary law. As such, this Court must limit its inquiry to the question whether the trial court's decision to limit the admissibility of the hospital records may have amounted to an error of federal constitutional magnitude. See Washington v. Schriver, 255 F.3d 45, 56 (2d Cir.2001) ("state evidentiary rules cannot be inflexibly applied in such a way as to violate fundamental fairness"). Where, as here, the question is "whether the exclusion of [ ] testimony violated [a defendant's constitutional] right to present a defense," the answer turns upon "whether 'the omitted evidence [evaluated in the context of the entire record] creates a reasonable doubt that did not otherwise exist.'" Justice v. Hoke, 90 F.3d 43, 47 (2d Cir.1996) (quoting United States v. Agurs, 427 U.S. 97, 112 (1976)). See also Crane v. Kentucky, 476 U.S. 683, 690 (1986) ("the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense") (quoting California v. Trombetta, 467 U.S. 479, 485 (1984)); Jones v. Stinson, 229 F.3d 112, 120 (2d Cir.2000).

In petitioner's case, defense counsel stated that she sought to introduce hospital records indicating that S.J. had no prior sexual contact or sexual intercourse before she was raped. The defense's theory was that an individual with no prior sexual activity would have likely sustained injury during the attack.

Trial Tr. 451-53. The trial court determined that New York's Rape Shield Law applied, noting that the "interest of justice" exception was intended to "allow such information to be admissible primarily based upon allegations of a perjury regarding prior claims of a sexual assault, or in one case where there was an alleged sexual conduct the date previous to the alleged sexual assault." The trial court then ordered that the portions of the medical reports concerning S.J.'s prior sexual activity be redacted. Trial Tr. 473-74.

Here, petitioner has not demonstrated that the trial court committed an error of New York state law. Moreover, petitioner cannot establish that the exclusion of the information regarding S.J.'s lack of sexual history deprived him of the right to present a defense. Whether S.J. had been sexually active prior to the rape had marginal relevance to petitioner's theory that S.J.'s testimony should not have been credited because a person with no previous sexual activity would have either sustained injury during the rape or would have woken up sooner as a result of the intercourse. Accordingly, the Court finds no error of constitutional magnitude arising out of the trial court's preclusion of this evidence.

### 2. Weight of the Evidence

Petitioner contends that the verdict is against the weight of the evidence because the victim's testimony was unworthy of belief. Pet. ¶ 22(B). Challenges to witness credibility, however, are not reviewable in habeas proceedings since credibility determinations

are the province of the jury. <u>See</u> <u>Maldonado v. Scully</u>, 86 F.3d 32, 35 (2d Cir.1996) (dismissing habeas claim because "assessments of the weight of the evidence or the credibility of witnesses are for the jury and not grounds for reversal on appeal"; stating that it must defer to the jury's assessments of both of these issues); <u>see also</u> <u>United States v. Vasquez</u>, 267 F.3d 79 (2d Cir.2001) ("The jury chose to believe the witnesses' testimony despite any inconsistencies. We will defer to the jury's assessment of credibility.") (citing <u>United States v. Payton</u>, 159 F.3d 49, 56 (2d Cir.1998) ("Where there is conflicting testimony at trial, we defer to the jury's resolution of the witnesses' credibility ...."). Petitioner's attack on the victim's credibility as a witness does not provide a basis for habeas relief.

### 3.   **Prosecutorial Misconduct**

Petitioner next argues that the prosecutor's conduct during trial and summation was prejudicial and denied him a fair trial. Pet. ¶ 22(C). Specifically, petitioner complains that the prosecutor's remark on summation that, "when you are assessing [the victim's] credibility . . . think about her life. Think about what it's like living in the two bedroom apartment on Ambrose," was an attempt to "invoke sympathy for [the] complaining witness." <u>Id.</u>; <u>see</u> Trial Tr. 575. Because the comment in question was not objected to at trial, the Appellate Division held that he failed to preserve his contention with respect to that comment, and declined to exercise its power of discretionary review. <u>Bones</u>, 50 A.D.3d at

1527 (citing <u>People v. Hess</u>, 234 A.D.2d 925 (4th Dept. 1996), in turn citing N.Y. Crim. Proc. L. § 470.05(2)).

Here, the Appellate Division expressly refused to reach the merits of petitioner's unpreserved claim by invoking New York's contemporaneous objection rule, codified at N.Y. Crim. Proc. L. § 470.05(2)[3], which is an adequate and independent state ground barring habeas review. <u>See</u> <u>Velasquez v. Leonardo</u>, 898 F.2d 7, 9 (2d Cir.1990); <u>see also</u> <u>Garcia v. Lewis</u>, 188 F.3d 71, 79-82 (2d Cir.1999); <u>accord, e.g.</u>, <u>Mills v. Poole</u>, No. 06-CV00842A, 2008 WL 2699394, *11 (W.D.N.Y. June 30, 2008) (analyzing § 470.05(2) in light of the <u>Cotto</u> "guideposts"). This claim is therefore subject to a procedural default.

A federal habeas court may review a petitioner's procedurally defaulted claim only if petitioner "can show cause for the default and prejudice attributable thereto," or demonstrate that failure to consider the federal claim will result in a "fundamental miscarriage of justice." <u>Murray v. Carrier</u>, 477 U.S. 478, 485, 495

---

[3] Section 470.05(2) provides,

For purposes of appeal, a question of law with respect to a ruling or instruction of a criminal court during a trial or proceeding is presented when a protest thereto was registered, by the party claiming error, at the time of such ruling or instruction or at any subsequent time when the court had an opportunity of effectively changing the same. Such protest need not be in the form of an "exception" but is sufficient if the party made his position with respect to the ruling or instruction known to the court, or if in reponse [sic] to a protest by a party, the court expressly decided the question raised on appeal. In addition, a party who without success has either expressly or impliedly sought or requested a particular ruling or instruction, is deemed to have thereby protested the court's ultimate disposition of the matter or failure to rule or instruct accordingly sufficiently to raise a question of law with respect to such disposition or failure regardless of whether any actual protest thereto was registered.

(1986) (internal quotations omitted) (citation omitted); <u>accord, e.g.,</u> <u>Velasquez</u>, 898 F.2d at 9. Petitioner has not alleged cause or prejudice in his submissions to the Court, and I find neither present on the record before me. Furthermore, petitioner has not set forth any facts to support the miscarriage of justice exception. Consequently, petitioner cannot overcome the state procedural default and this claim of prosecutorial misconduct is barred from habeas review.

### 4.   Trial Court's Refusal to Adjourn

Petitioner avers that the trial court erred in denying petitioner's request to adjourn the trial "due to pregnant witness." In support of this contention, petitioner points an exchange between McClary and defense counsel, when McClary gratuitously mentioned her pregnancy during cross-examination. Pet. ¶ 22(D). The Appellate Division held that the trial court did not abuse its discretion in denying petitioner's request for an adjournment because he failed to make the requisite showing of prejudice. <u>Bones</u>, 50 A.D.3d at 1528 (citing <u>People v. Arroyo</u>, 161 A.D.2d 1127 (4th Dept. 1990)).

"Determinations on motions for adjournment are 'made in the discretion of the trial judge, the exercise of which will ordinarily not be reviewed.'" <u>Rosario v. Burge</u>, 542 F.Supp.2d 328, 339 (S.D.N.Y.2008) (quoting <u>Avery v. Alabama</u>, 308 U.S. 444, 446 (1940)); <u>see also</u> <u>Drake v. Portuondo</u>, 321 F.3d 338, 344 (2d Cir.2003) ("Scheduling is a matter that is of necessity

committed to the sound discretion of the trial court."). "[O]nly an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay' violates the [Constitution]." Morris v. Slappy, 461 U.S. 1, 12 (1983); accord Drake, 321 F.3d at 344.

Here, petitioner sought an adjournment on the basis that McClary, who was seven months pregnant at the time of trial, complained of aggravation and discomfort, and "blurted out prejudicial statements at times." The Court agrees with the state appellate court that petitioner cannot establish prejudice as a result of McClary's pregnancy, which appears to have had no connection to the issue being tried. During cross-examination, McClary made multiple, irrelevant comments in response to counsel's questioning, including: "I'm tired of being aggravated. I'm seven and a half months pregnant," "my back is really hurting," and telling defense counsel to "get on with it [the questioning], please." Trial Tr. 300-01. In response, the trial court instructed the jury to disregard McClary's comments, and directed McClary to answer the questions as asked. Id. Though inappropriate, McClary's comments did not prejudice the defense. If anything, the witness' defensive outbursts cut against her credibility. The trial court's denial of the request for an adjournment was therefore not "unreasoning" or "arbitrary," and the Appellate Division's resolution of this issue cannot be said to be contrary to, or an unreasonable application of Supreme Court precedent.

### 5.    Unduly Suggestive Photo Array

As he did on appeal, petitioner states that the photo array was unduly suggestive because petitioner's photo was "substantially larger and a close perspective then all of the others," and the trial court should have suppressed the victim's in-court identification of petitioner.  Pet., Attach. A; Suppression Hr'g Mins. at 48-49.  The Appellate Division rejected this contention, holding that the photo array "did not draw [ ] the viewer's attention so as to indicate that the police ha[d] selected a particular individual." Bones, 50 A.D.3d at 1528 (internal quotation omitted).

"A defendant's right to due process includes the right not to be the object of suggestive police identification procedures that create 'a very substantial likelihood of irreparable misidentification.'" United States v. Concepcion, 983 F.2d 369, 377 (2d Cir.1992) (quoting Simmons v. United States, 390 U.S. 377, 384 (1968)); accord, e.g., Neil v. Biggers, 409 U.S. 188, 198 (1972). The Supreme Court has established a two-step inquiry for evaluating the constitutionality of in-court identification testimony based on out-of-court identification procedures. E.g., Neil v. Biggers, 409 U.S. at 198. The inquiry requires a determination of whether the identification process was impermissibly suggestive and, if so, whether it was so suggestive as to raise a very substantial likelihood of irreparable misidentification. Id.; accord, e.g., United States v. Wong, 40 F.3d 1347 (2d Cir.1994). Even if the

pretrial identification procedure is found to have been unduly suggestive, the trial court nevertheless may allow in-court identification testimony provided that the identification is independently reliable. Manson v. Brathwaite, 432 U.S. 98 (1977); accord, e.g., Jarrett v. Headley, 802 F.2d 34, 42 (2d Cir.1986).

"In evaluating whether or not a photographic array was unduly suggestive, a court must consider several factors, including the size of the array, the manner of presentation by the officers, and the contents of the array." United States v. Thai, 29 F.3d 785, 808 (2d Cir.) (citations omitted), cert. denied, 513 U.S. 977 (1994). "If there is nothing inherently prejudicial about the presentation, such as use of a very small number of photographs, or the utterance of suggestive comments before an identification is made, the 'principal question is whether the picture of the accused, matching descriptions given by the witness, so stood out from all of the other photographs as to suggest to an identifying witness that [that person] was more likely to be the culprit.'" Id. (quoting Jarrett v. Headley, 802 F.2d at 41 (quoting United States v. Archibald, 734 F.2d 938, 940 (2d Cir.1984)); internal citations omitted).

The record in this case includes the photo array that petitioner asserts was unduly suggestive. See Resp't Appx. C at 42. The photo array consists of six photographs, a number which has been held not to be impermissibly suggestive. See Archibald, 734 F.2d at 940; United States v. Bennett, 409 F.2d 888, 898 (2d Cir.),

cert. denied, 396 U.S. 852 (1969). Although petitioner's face is barely larger than the others pictured, the six photos all depicted African-American males appearing to be in their 20s to 30s, with nearly identical facial hair and hair length.  Hr'g Mins. at 51, 59.  See, e.g., Knight v. Walsh, 524 F.Supp.2d 255, 279-280 (W.D.N.Y. 2007) (rejecting argument that photo array was impermissibly suggestive where petitioner was depicted with "a larger head than the other individuals"). Here, petitioner's photograph does not stand out among the others "as to suggest to [the] identifying witness[es] that [he] was more likely to be the culprit." Thai, 29 F.3d at 808 (internal quotations omitted); see also United States v. Bautista, 23 F.3d 726, 731 (2d Cir.1994) (photographic array was not impermissibly suggestive despite fact that defendant's photograph was slightly brighter and more close-up than the others). The Due Process Clause does not require law enforcement "to scour about for a selection of photographs so similar in their subject matter and composition as to make subconscious influences on witnesses an objective impossibility ." United States v. Bubar, 567 F.2d at 199 (fact that defendant's photograph was sharper in definition and reflected a narrow strip of light across the defendant's head does not render array suggestive); Ennis v. Walker, 2001 WL 409530, *20 (S.D.N.Y.2001) (appearance of black bar under defendant's photograph does not render array unduly suggestive).

Thus, the Court finds that when viewing the array as a whole, petitioner's photograph was not so different as to suggest his culpability.[4] Accordingly, there is no basis to reach the second step of the <u>Biggers</u> inquiry, and the photo array in this case does not represent an objectively unreasonable application of Supreme Court law.

### 6.    **Erroneous <u>Sandoval</u> Ruling**

Petitioner next claims that the trial court's <u>Sandoval</u>[5] ruling was an abuse of discretion. Pet., Attach. A. The Appellate Division held that petitioner failed to preserve the issue for review, and declined to review the matter in the interest of justice. <u>Bones</u>, 50 A.D.3d at 1528. As discussed earlier, the appellate court's reliance on the state procedural rule requiring a contemporaneous objection constitutes an adequate and independent ground barring habeas review. <u>See supra</u>, Point III.B.3. Petitioner does not allege cause and prejudice or actual innocence to overcome the procedural default.

In any event, petitioner's claim that the court abused its discretion in its <u>Sandoval</u> ruling is barred from habeas review because petitioner failed to testify at trial. <u>See</u> <u>Grace v. Artuz,</u>

---

[4] The record also indicates that no suggestive comments were made by police during the procedure.

[5] <u>See</u> <u>People v. Sandoval</u>, 34 N.Y.2d 371 (1974) (a prospective ruling on admissibility or prior convictions or proof of prior commission of specific criminal, vicious, or immoral acts to impeach a defendant's credibility).

258 F.Supp.2d 162, 171-72 (E.D.N.Y.2003) (in absence of petitioner taking the stand to testify at trial, "petitioner's claim as to the impropriety of the Sandoval ruling [did] not raise a constitutional issue cognizable on habeas review") (citing Carroll v. Hoke, 695 F.Supp. 1435, 1440 (E.D.N.Y.1988)), aff'd, 880 F.2d 1318 (2d Cir.1989) (citing Luce v. United States, 469 U.S. 38, 43 (1984) (holding that in order "to raise and preserve for review the claim of improper impeachment with a prior conviction, a defendant must testify")); accord Brathwaite v. Duncan, 271 F.Supp.2d 400, 401 (E.D.N.Y.2003) (Sandoval claim not cognizable on federal habeas review where petitioner did not testify at trial).

This claim must therefore be dismissed.

### 7.   Cumulative Error

As discussed above, each of the individual errors petitioner cites are either meritless or procedurally barred from review by this Court. Accordingly, his claim that cumulative trial errors deprived him of his right to a fair trial provides no basis for habeas relief and is dismissed.

## IV.  Conclusion

For the reasons stated above, Corey Bones' petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the action is dismissed. Petitioner has failed to make a "substantial showing of a denial of a constitutional right", 28 U.S.C. § 2253 (c)(2), the court declines the issue of certificate of appealability. See, e.g., Lucidore v. New York State Div. of

<u>Parole</u>, 209 F.3d 107, 111-113 (2d Cir. 2000). The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person. <u>Coppedge v. United States</u>, 369 U.S. 438 (1962).

       **SO ORDERED.**

                               S/Michael A. Telesca

                                 _____

                                       MICHAEL A. TELESCA
                             United States District Judge

Dated:     May 6, 2011
            Rochester, New York